**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION AT LAFAYETTE**

In re:
CONSOLIDATED INDUSTRIES CORP.  )
               Debtor.          )
_____)

DANIEL L. FREELAND, Trustee      )      Civil No. 4:04cv64
           Plaintiff,       )
                            )
      vs.                  )
                            )
ENODIS CORPORATION, et al.,      )
           Defendants.     )
_____)

**MEMORANDUM, ORDER & OPINION**

    Defendant Enodis Corporation appeals from the Bankruptcy Court's Decision in favor of Trustee, Daniel L. Freeland and against Enodis Corporation.  For the reasons set forth below, this Court affirms the Bankruptcy Court's Decision.

    Defendants Welbilt Holding Company, Marion H. Antonini, and Daniel Yih, pursuant to Bankruptcy Rule 9033, object to the Bankruptcy Court's proposed findings of fact and conclusions of law.  For the reasons set forth below this Court rejects the objections and accepts the Bankruptcy Court's proposed findings of fact and conclusions of law in their entirety.

    I.      Background and Facts

    Consolidated was an Indiana corporation and a subsidiary of Welbilt Holding Company. Welbilt Holding was, in turn, a subsidiary of Welbilt Corporation, now known as Enodis

Corporation.[1]  Consolidated manufactured and sold furnaces to original equipment manufacturers (OEMS), and it had approximately $8 million in cash in 1988.  In 1987, Congress set new standards for the furnace and appliance industry by passing the National Appliance Energy Consumer Act (42 U.S.C. § 6295), and Consolidated believed that those new standards could affects its production and adversely affect sales.  Consequently, Consolidated believed it would have to invest in redesigning its furnaces and develop an air-conditioner product line.

In August of 1998, Kolhberg & Co., a Wall Street buyout firm, formed Churchill Acquisition Corporation to acquire Welbilt's stock from its public shareholders.  Up until that time, Welbilts primary shareholders were members of the Hirsch Family who founded Welbilt.  After a tender offer to Welbilt, Churchill owned 63.4% of Welbilt's stock and David and Richard Hirsch and Lawrence Gross retained 36.6% of Welbilt.  The transaction was structured as a leveraged buyout (LBO) and Welbilt borrowed the need money from banks.  David Hirsch, Richard Hirsch, and Lawrence Gross became Consolidated's only directors for the first six months after the LBO.

In February of 1989, Welbilt forced Consolidated to issue a $20 million dividend in the form of a ten-year note payable with interest at the rate of 13.75%.  Later that month, Welbilt also took $6.9 million in cash from Consolidated.  Although Consolidated's records reflected this taking as a dividend, it was never formally declared or approved by Consolidated's board.  In November 1989, Welbilt had Consolidated issue an additional $10 million dividend, also in the form of a ten-year note payable with interest at the rate of 13.75%.  Additionally, Welbilt

---

[1]In the interest of consistency, the Court will refer to the Appellant in this matter as "Welbilt."  That should not be confused with Welbilt Holding Company, which will be referred to as "Holding" or "Welbilt Holding."

directed all of its subsidiaries, including Consolidated, to maximize cash flow.  Accordingly,
Consolidated was to deposit all of the cash it collected from its operation into bank accounts
controlled by Welbilt.  To reflect this, Welbilt instructed Consolidated to record the deposits as
an asset.  This asset, however, was reduced by any money that Welbilt allowed Consolidated to
spend in its daily operations and by charges it made on Consolidated for Corporate services.

       During the same period in which Welbilt struggled with its LBO debt, Consolidated
began to have problems with its horizontal furnaces.  Although Welbilt was aware of these
problems, it continued to take money from Consolidated.  Welbilt took approximately $14
million of Consolidated's cash in 1989 and 1990.  As a result, Consolidated was forced to
borrow $7 million from Tippecanoe County, Indiana to buy the equipment it need to
manufacture the new furnaces which would replace its older line.  In March 1990, North
Carolina's Attorney General began investigating the problems with the horizontal furnaces and
concluded that they were defective and that compensation was warranted.  In 1992, expert
engineers concluded that the heat exchangers in the furnaces needed to be redesigned.  In 1993,
the Consumer Product Safety Commission (CPSC) investigated a vent collar defect in
Consolidated's furnaces.  During this investigation, CPSC also became aware of the exchanger
problem with the furnaces and more investigations began.  Additionally, a group of consumers in
California threatened a class action law suit – the Salah Class Action Suit.  Consolidated also
faced numerous warranty problems with its customers.  As the failure rate of the exchangers
increased, Consolidated's customers incurred large warranty expenses and looked to
Consolidated for reimbursement.

       In 1994, Welbilt decided to sell Consolidated.  This was difficult in light of the problems

outlined above along with a $30 million debt in dividend notes.  To make Consolidated more attractive, Welbilt cancelled the dividend notes in 1995.  In 1996, William Hall emerged as a prospective buyer.  Hall failed to secure financing for his initial offer, however, and the sale was not completed.

Meanwhile, the CPSC re-instituted its investigation of the horizontal furnaces and the Court in the Salah action granted class certification.  In September 1997, the CPSC asked Consolidated to recall all furnaces in California.  In January 1998, Mr. Hall was able to purchase Consolidated by pledging Consolidated's remaining assets to Finova Capital Corporation for $7 million which was transferred to Welbilt.

Four months after the sale to Hall, Consolidated filed a petition for relief under chapter 11 of the United States Bankruptcy Code.  On May 10, 1999, Consolidated, as debtor in possession, initiated adversary proceeding 99-4022 seeking damages from Enodis Corporation f/k/a Welbilt Corporation, Welbilt Holding Company, Marion H. Antonini, Daniel Yih, Richard Hirsch, David A. Hirsch, and Lawrence Gross on 17 counts.  A trustee was appointed in the Chapter 11 case and was substituted as the plaintiff in this action.  On August 11, 2000, Consolidated's bankruptcy case was converted to chapter 7.

II.    Issues

The Appellant raises numerous issues for review.  They are, as stated by the Appellant[2]:

1.    Whether the Decision erroneously concludes that the dividend notes rendered Consolidated insolvent.

2.    Whether the Bankruptcy Court erred by failing to estimate contingent liabilities

---

[2]As this list illustrates, Welbilt appeals every issue under the sun.  The Court will address only those arguments meritorious enough to warrant discussion.

4

and determine the proper multiplier for the probability that the contingency would occur.

3.      Whether the Decision erroneously relies on hearsay to support its finding that furnace related claims rendered Consolidated insolvent after 1995.

4.      Assuming arguendo that hearsay evidence was admissible for some purpose, did the Bankruptcy Court err in concluding that the furnace related claims rendered Consolidated insolvent after 1995.

5.      Is the Defendant's failure to consider available insurance coverage for Consolidated's disputed, contingent liabilities error.

6.      Whether the Bankruptcy Court erred by admitting opinion testimony offered by the Trustee.

7       Whether the conclusion that the Trustee met his various burdens of proof is error.

8.      Whether the Decision is in error when it holds the Trustee could stand in the shoes of the IRS and void any transfer at issue.

9.      Whether the conclusion that the Trustee proved that at the time of Consolidated's bankruptcy Trane could have avoided any transfer that is clearly erroneous.

10.     Whether the Decisions holding that the Trustee was entitled to pursue remedies under the FDCPA was an error of law.

11.     Whether the Bankruptcy Court erred by holding that the Trustee had standing to assert claims for unjust enrichment and common law unlawful distribution.

12.     Whether the Decision improperly fails to consider reasonably equivalent or subsequently recovered value Enodis provided to Consolidated.

13.     Whether the decision errs by expanding *Moore v. Bay* to multiple transfers.

14.     Whether the conclusion that Enodis was unjustly enriched is legally and factually flawed.

15.     Whether the Decision applies the wrong period of limitations to the Trustee's claims.

16.     Whether the *Fricke* opinion was abrogated by unmistakable implication and, even if it was not, would it have any application to this case.

5

17.     Whether the Bankruptcy Court erred by awarding the Trustee a recovery under 11 U.S.C. § 550(a) in excess of the properly determined claims of all creditors.

18.     Whether the Bankruptcy Court erred by awarding the Trustee prejudgment interest.

19.     Whether the Bankruptcy Court erred by disallowing Enodis' proof of claim.

20.     Whether the Decision wrongly awards the Trustee relief not sought in the Pre Trial Order and in certain respects inconsistent with the relief sought therein.

21.     Whether the Court should certify to the Indiana Supreme Court any of the issues Indiana law implicated by the decision.

III.     Standard of Review

A district court reviews a bankruptcy court's findings of fact for clear error. *In re Smith*, 286 F.3d 461, 464-65 (7th Cir. 2002). When reviewing a finding of fact, "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). A finding is clearly erroneous if the bankruptcy court's determination leaves the reviewing court with the definite and firm conviction that the bankruptcy court committed a mistake. *See In re Porter*, 202 B.R. 109, 120 (N.D. Ind. 1996). Issues of law and mixed questions of law and fact are reviewed *de novo*. *Mungo*, 355 F.3d at 974. A district court may affirm, reverse, or remand the bankruptcy court's ruling. *See Smoker v. Hill Assoc., Inc.*, 204 B.R. 966, 970 (N.D. Ind. 1997).

In non-core proceedings, "the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and

6

after reviewing de novo those matters to which any party has timely and specifically objected."

28 U.S.C. § 157(c)(1); Fed. R. Bankr. P. 9033(d).  The district court may accept, reject, or

modify the proposed findings of fact and conclusions of law, receive further evidence, or

recommit the matter to the bankruptcy judge with instructions.  Fed. R. Bankr. P. 9033(d).

IV.     Discussion

A.     Insolvency

Welbilt challenges the Bankrupcty Court's determination that Consolidated was insolvent

between January 1989 and the bankruptcy petition date.  In support of that challenge, Welbilt

argues that the Bankruptcy Court: (1) incorrectly concluded that the $30 million in dividend note

debts should be treated as "real" debts; and (2) failed to properly value Consolidated's furnace-

related liabilities.  The Court disagrees.

A debtor is insolvent if the fair value of its assets is less than the fair value of its

liabilities. Ind. Code § 32-18-2-12; 28 U.S.C. § 3302.  Fair value is determined by estimating

what a debtor's assets would realize if sold in a prudent manner under current market conditions.

*Orix Credit Alliance v. Harvey ex rel. Lamar Haddox Contractor (In re Lamar Haddox*

*Contractor, Inc.)*, 40 F.3d 118, 121 (5th Cir. 1994).  A Court has broad discretion in determining

how to reach a fair valuation and broad discretion to determine what evidence is relevant.  *In re*

*Roblin*, 78 F.3d 30, 35 (2d Cir. 1995); *Gillman v. Scientific Research Prods.*, 55 F.3d 552, 557

(10th Cir. 1995); *In re Consolidated Indus. Corp.*, 292 B.R. 354, 359-60 (N.D. Ind. 2002).

Generally, a "Trustee can use any appropriate means to prove insolvency on the date of the

[challenged] transfer."  *Matson v. Strickland (In re Strickland)*, 230 B.R. 276, 282 (Bankr. E.D.

Va. 1999) (citing *Hazardous Waste Treatment Council v. U.S. EPA*, 886 F.2d 355, 356 (10th Cir.

1989)).  The typical starting point for a determination of insolvency is the debtor's balance sheet.
*See In re Lease-A-Fleet, Inc.*, 155 B.R. 666, 679 (Bankr. E.D. Pa. 1993).

On the liability side, the insolvency analysis must include contingent claims against the
debtor not listed on a balance sheet prepared in accordance with Generally Accepted Accounting
Principles ("GAAP").  *See, e.g.*, *Covey v. Commercial Nat'l Bank*, 960 F.2d 657, 658-60 (7th
Cir. 1992); *In re Xonics Photochemical, Inc.*, 841 F.2d 198, 200-01 (7th Cir. 1988).  The value of
the assigned liability must be made from the perspective of the debtor, not that of the creditor.  *In
re TWA*, 134 F.3d 188, 196-97 (3d Cir. 1998); *Covey*, 960 F.2d at 658-60.  That means that the
debt is valued at its full amount multiplied by the probability that it may come due.  *Xonics*, 841
F.2d at 200-01.

The real dispute in the insolvency issue is how to value the $30 million dividend note
debt.  There is a basic agreement reflected in the record that if the $30 million in dividend notes
created "real" debt, then Consolidated was insolvent at all times between 1989 and the petition
date, irrespective of any increase that should have been made in the warranty reserves or
accounting for any of the furnace-related claims.  The Bankruptcy Court found that the notes
created "real" liabilities and, therefore, Consolidated was insolvent.  This Court agrees.

A contingent obligation is one where the legal duty to pay does not exist until the
occurrence of some future event.  *See In re Knight*, 55 F.3d 231, 236 (7th Cir. 1995).
Contingency "relates to the time or circumstances under which the liability arises."  *Id.* (quoting
*In re McGovern*, 122 B.R. 712, 715 (Bankr. N.D. Ind. 1989)).  If the legal obligation to pay
arises at the time the debt is made, the claim cannot be contingent.  *See Knight*, 55 F.3d at 236.

The two notes at issue here, which are identical except for the due dates and amounts,

both state that on the respective due dates "the undersigned promises to pay to Welbilt Holding

Company, the principal amount of Twenty Million Dollars [or] Ten Million Dollars

[respectively], with interest thereon at the rate of Thirteen and Three-Quarters Percent (13-3/4%)

per annum."  It was further agreed that the obligations under the notes could be accelerated if

certain events occurred and agreed that if the notes were not paid when due, the holder could

recover "all costs and expenses of collection, including reasonable attorneys' fees."  In other

words, Consolidated made an unconditional promise to pay when it executed and delivered the

promissory notes.  This Court agrees with the Bankruptcy's Court's conclusion that, the "only

contingency was whether, when the day of reckoning came, the assets needed to pay the debt

would be there.  This is a contingency related to the debtor's ability to pay; not its duty to do so."

Decision at 17.[3]

        The behavior of the parties supports a finding that the notes created a "real" debt.[4]

Consolidated honored its obligations under the notes.  It recorded the notes on its financial

statements.  It also recorded an interest charge each month on account of $30 million of debt.

Consolidated then paid approximately $24 million in interest payments to Welbilt for the benefit

of the holder of the note, Welbilt Holding.  Welbilt likewise treated the notes as real obligations.

Welbilt pledged the notes to its bank group and, for tax purposes, treated the $30 million in

dividend notes as a dividend that had been paid.  Welbilt took interest payments from

---

        [3]The Court notes that Welbilt's reliance on *Covey* is misplaced.  *Covey* dealt with
determining the value of a contingent liability.  The issue here is not how to value a contingent
liability but whether the liability is contingent in the first place.

        [4]Additionally, the Defendants in the adversary proceeding below argued that
Consolidated was "expected to pay" the principal amount of the dividend notes.  Def. Tr. Br. at
47 (Bankr. Docket No. 559).

Consolidated whenever there was cash available to pay the interest.  Therefore, the dividend notes were a real debt properly considered in determining the debtor's solvency.

Welbilt also contends that the Bankruptcy Court erred in the manner in which it accounted for Consolidated's furnace-related liabilities.  The Bankruptcy Court found that "[b]y the time the dividend notes were cancelled, the contingent liabilities had become so numerous, so potentially expensive and so severe that – even after being discounted for their contingent nature – they were sufficient to render Consolidated insolvent."  Decision at 19.  Welbilt argues that the Bankruptcy Court was required to calculate the exact amount of the contingent furnace-related liabilities and determine the appropriate multiplier.

Generally, "to determine the value of a contingent liability a court must determine the likelihood that the contingency will occur."  *Covey*, 960 F.2d at 659 (citing *Xonics,* 841 F.2d 198; *In re Chase & Sanborn Co.*, 904 F.2d 588, 594 (11th cir. 1990); Douglas G. Baird, *The Elements of Bankruptcy* 150 (1992)).  The record indicates that the Bankruptcy Court did just that.  The Court stated, that "[b]y the time the dividend notes were cancelled in 1995, these contingent claims had become so numerous, so potentially expensive and so severe that – even after being discounted for their contingent nature – they were sufficient to render Consolidated insolvent.  Decision at 19.  This Court is unwilling to find that ruling "clearly erroneous" on the basis that the Bankruptcy Court did not explicitly declare an exact numerical value.  That is especially true in light of the substantial evidence supporting the Bankruptcy Court's finding.  The record contains overwhelming evidence that Consolidated faced substantial furnace-related liabilities, including warranty claims, tort litigation, a class action lawsuit, and a potential recall by the CPSC.  The record also contains unrebutted evidence that Consolidated did not have

insurance coverage for warranty claims.  Welbilt's conclusory statements about "knowledgeable witnesses" and "meritorious defenses" are simply not enough to demonstrate clear error.[5]  *See* Appellant's Brief at 15.  At any rate, this discussion is academic in light of the Bankruptcy Court's finding that the dividend note debt rendered Consolidated insolvent even when accounting for the furnace-related claims.  Therefore, any error made by the Bankruptcy Court on this issue was necessarily harmless.

        B.      Standing

Welbilt challenges the Bankruptcy Court's finding that the Trustee has standing under Bankruptcy Code Section 544(b).  More specifically, it argues that the Trustee was required and yet failed to prove: (1) the existence of an actual "creditor holding an unsecured claim that is allowable under section 502;" and (2) that the actual creditor had standing on the petition date "under applicable law" to bring the avoidance action.  Appellant's Brief at 23.  The Court disagrees.

Section 544(b) of the Bankruptcy Code confers upon a trustee the powers of a creditor with an allowable unsecured claim to "avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law."  11 U.S.C. § 544(b).  The primary purpose of Section 544(b) "is to undue pre-petition transfers of property that remove or withhold that property from the estate to the prejudice of creditors."  *SIPC v. Stratton Oakmont, Inc.*, 234 B.R. 293, 311 (Bankr. S.D.N.Y. 1999).  Section 544(b) of the Bankruptcy Code permits a chapter 7 trustee to "avoid any transfer of an interest of the debtor in property" that an unsecured creditor of the

---

[5]The supplemental authority filed as a letter from Attorney Bainton (Docket No. 17) does not change this Court's determination on this issue.

estate could have pursued, provided that "a creditor existing at the time the transfers were made.

. . still had a viable claim against [the] debtor *at the time the bankruptcy petition was filed*." *In*

*re Acequia, Inc.*, 34 F.3d 800, 807 (9th Cir. 1994) (quoting *In re McDowell*, 87 B.R. 554, 558

(Bankr. S.D. Ill. 1988)) (emphasis in original).  A claim may be unliquidated, contingent,

unmatured, or disputed and still be viable.  *See In re Jason Pharms., Inc.*, 224 B.R. 315, 320

(Bankr. D. Md. 1998); *Hoult v. Hoult*, 862 F. Supp. 644, 646 (D. Mass. 1994); *In re Anderson*,

166 B.R. 516, 523-525 (Bankr. D. Conn. 1994).  Additionally, the claim that existed as of the

date of the questioned transfer need not be the same claim that existed on the petition date, as

long as the creditor is the same.  *See In re Bushey*, 210 B.R. 95, 101-102 (B.A.P. 6th Cir. 1997);

*In re Aluminum Mills Corp.*, 132 B.R. 869, 890 (Bankr. N.D. Ill. 1991).

> The Bankruptcy Court found that the Trustee proved the existence of more than twenty

creditors who had claims as of the petition date and also held claims dating back to before the

transfer at issue.  Decision at 8.  Contrary to Welbilt's assertions, the proofs of claims are

competent evidence on this issue.  *See, e.g.*, *In re Leonard*, 125 F.3d 543, 544; *In re Carrozzella*

*& Richardson*, 302 B.R. 415, 420-21 (stating, that the "[c]ourt takes judicial notice of the several

Proofs of Claim on file in this bankruptcy case which assert claims 'incurred' prior to July 19,

1991"); *In re Joy Recovery Tech. Corp.*, 257 B.R. 253, 267-68 (Bankr. N.D. Ill. 2001).

Furthermore, as *Leonard* demonstrates, a trustee need not identify the specific creditor that

creates standing under 11 U.S.C. § 544(b) so long as he shows that at least one creditor exists.

*Leonard*, 125 F.3d 544.  So it stands to reason that the Trustee need not prove up the claims of

specific creditors.

> Welbilt's argument that the Trustee can avoid only one transfer is similarly without

merit.  In *Moore v. Bay*, 284 U.S. 4 (1931), the Supreme Court held that a trustee may avoid a transfer for the benefit of all creditors without regard to the size of the claim of the creditor that provides the trustee with standing.  That proposition is readily ascertainable from *Leonard* as well.  *See Leonard*, 125 F.3d at 544-45 (even if the Trustee cannot identify creditors whose claims total more than the value transfers to be avoided, "the Trustee can avoid the transaction entirely.").

Welbilt's other standing arguments regarding claims that arose after the 1998 sale of Consolidated to Hall and the claims of Basler Electric and Honeywell are raised for the first time to this Court.  They are, therefore, waived.  *See Prymer v. Ogden*, 29 F.3d 1208, 1215 (7th Cir. 1994).

C.      Actual Fraud

On the issue of actual fraud, Welbilt makes one argument that requires attention by this Court: that Consolidated transferred all of its assets to Welbilt in good faith to eliminate $465,000 of state income tax liability.  The Bankruptcy Court found that "expert testimony indicated that Welbilt took $9.5 million more than necessary to avoid taxes and that none of this taking saved even a penny."  Decision at 23.  The Bankruptcy Court also found that the "real reason the cash was taken was Welbilt's need to pay its 1988 LBO debt," and "Welbilt intended to take all the cash regardless of any tax benefit."  Decision at 23 (citations omitted).  The record evidence overwhelmingly supports those findings, and nothing in the record or Welbilt's brief compels a finding of clear error.

D.      Reasonably Equivalent Value

Welbilt argues that the Bankruptcy Court erred in finding that Consolidated did not

receive reasonably equivalent value in exchange for the $30 million transferred to Welbilt.

Specifically, it argues that Consolidated received reasonably equivalent value because Welbilt:

(1) paid $2 million in federal taxes for Consolidated; (2) obtained a $7.1 million letter of credit

for Consolidated; and (3) paid $1.1 million of Consolidated's pre-sale checks which were

presented for payment post-sale.  The Court disagrees.

      The Bankruptcy Court found that "[o]f the transfers at issue here (1992-1997)

Consolidated received absolutely nothing in exchange for any of them.  All of them represent

interest paid on account of the dividend notes."  Decision at 14.  Whether a debtor has received

reasonably equivalent value for a transfer turns on what the debtor received for the transfer it

made.  *In re Consolidated Indus. Corp.*, 292 B.R. 354, 359 (N.D. Ind. 2002).  A debtor receives

nothing of value when it pays a dividend to a shareholder and the payment is not made for

reasonably equivalent value.  *Id.*; *see also*, *In re Brentwood Lexford*, 292 B.R. 255, 267

(Bankr.N.D.Tex. 2003).  Because none of the value allegedly provided by Welbilt was given *in

exchange for* the money Welbilt received from Consolidated, reasonably equivalent value was

not given.  Furthermore, as the Bankruptcy Court noted, this Court has already rejected the $7.1

million letter of credit argument and will not revisit it here.  *See Consolidated*, 292 B.R. at 365.

      E.     Unjust Enrichment

      Welbilt argues for the first time on appeal that the Bankruptcy Court erred in granting the

Trustee's unjust enrichment claim because Welbilt offset any unjust enrichment by providing

"direct benefits" to Consolidated.  Appellant's Brief at 37.  As stated earlier, this argument is

waived because it was not raised below.  *See Prymer*, 29 F.3d at 1215.  Moreover, Welbilt's

reliance on its "reasonably equivalent value" arguments is futile in light of this Court's rejection

of those arguments above.

F.     Timeliness

Welbilt argues that the Trustee's claims arising out of the dividend notes are time barred because the statute of limitations began to run when the obligation to make the payments arose, not when the interest payments were made.  Welbilt relies on *In re Marvel Entm't Group, Inc.*, 273 B.R. 58 (D. Del. 2002) in support of this argument.  This Court rejected a substantially similar argument when it granted summary judgment in favor of the Trustee and allowed the Trustee to recover transfers made on account of the dividend notes between May 1997 and January 1998.  *See Consolidated Indus.*, 292 B.R. at 364.  The Court rejects the argument again here.

For purposes of fraudulent transfer claims, the statutes define when the claims arise.  Under the relevant statutes, when the transfers actually occurred – in this case, when Welbilt paid itself interest – determines when the claims arise.  Ind. Code § 32-18-2-10; 28 U.S.C. § 3301(6).  *Marvel* is simply distinguishable and, at any rate, is not controlling here.

Welbilt also argues that the Bankruptcy Court erred in finding that the Trustee's unjust enrichment claim was not time barred.  Specifically, it argues that the applicable statute of limitations to a claim for unjust enrichment is six years, rather than 10 years.  But Welbilt overlooks the Bankruptcy Court's determination that the statute of limitations period should be equitably tolled because no one could have discovered the fraud.  The Bankruptcy Court found that the "only documents which reflected the transfers of cash between Consolidated and Welbilt were Consolidated's internal financial statements and the inter-company memoranda directing the transfers to be made."  Decision at 24.  Welbilt offers no reason to find this determination

15

erroneous.

Like many of the arguments raised by Welbilt, the other arguments on the issue of timeliness are raised for the first time before this Court.  Those arguments are waived.  *See Prymer*, 29 F.3d at 1215.

G.      Illegal Dividends

Welbilt argues that the Bankruptcy Court erred in finding that Indiana common law required Welbilt to return the $30 million of improper dividends because (1) this claim was not raised in the Pretrial Order; and (2) the Indiana Business Corporations Act abrogated the common law right of a corporation to recover illegally paid dividends from shareholders.  The Court disagrees.

As to the first argument, it is raised for the first time in this Court and is therefore waived.  *Id*.  More importantly, the Pretrial Order states on page 18 that the Trustee was "seeking to recover from the Welbilt Defendants under . . . [a] common law right to recover from prohibited shareholders."  (Bankr. Docket No. 501).

Welbilt's second argument states that because Section 23-1-26-3 of the Indiana Business Corporations Act limits the liability of shareholders, the provision abrogates by unmistakable implication *Fricke v. Angemeier*, 101 N.E. 329, 332 (Ind. App. 1913).  *Fricke* held that a common law right exists to recover illegal dividend payments from the shareholders that received them.  *Id*.  In Indiana, an "abrogation of the common law will be implied (1) where a statute is enacted which undertakes to cover the entire subject treated and was clearly designed as a substitute for the common law; or (2) where the two laws are so repugnant that both in reason may not stand."  *Clary v. Lite Machines Corp.*, 850 N.E.2d 423, 442 (Ind. Ct. App. 2006)

16

(citing *Irvine v. Rare Feline Breeding Ctr.*, 685 N.E.2d 120, 123 (Ind. Ct. App. 1997)).

Significantly, Welbilt fails to identify any specific language of the IBCA that would abrogate the

holding in *Fricke*.  The Act does state that shareholders are generally not liable for the acts or

debts of the corporation, "except that the shareholder may become personally liable by reason of

the shareholder's own acts or conduct."  Ind. Code § 23-1-26-3.  As the Bankruptcy Court

correctly held, nothing in Ind. Code § 23-1-26-3 eliminates the common law right outlined in

*Fricke*.  Decision at 26.  *See In re Kettle Fried Chicken of Am., Inc.*, 513 F.2d 807, 813-14 (6th

Cir. 1975) (holding that an express statutory provision which allows for recovery from directors

does not abrogate the common law rights of a trustee to recover from a shareholder).  Welbilt

also points to Ind. Code § 23-1-35-4(a), which states, "a director who votes for or assents to a

distribution made in violation of this article or the articles of incorporation is personally liable to

the corporation for the amount of the distribution that exceeds what could have been distributed

without violating this article or the articles of incorporation."  Nothing in this provision limits

the common law right of a corporation to recover illegal dividends from shareholders.

Additionally, as the Trustee points out, this provision is contained within a chapter of the Act

that deals only with the conduct of *directors*, not shareholders.

> H.      Pre-Judgment Interest

Welbilt challenges the Bankrupcty Court's award of pre-judgment interest to the Trustee,

stating that no authority holds "that a plaintiff seeking avoidance of a fraudulent transfer is

automatically entitled to interest."  Appellant's Brief at 44.  While that may be true, in Indiana

pre-judgment interest may be awarded "to fully compensate an injured party for the lost use of

money."  *Sand Creek Country Club, Ltd. v. CSO Architects, Inc.*, 582 N.E.2d 872, 876 (Ind. Ct.

App. 1991) (citations omitted).  An award of pre-judgment interest "is generally not considered a matter of discretion," but should be awarded where damages are readily "ascertainable and the amount of the claim rests upon mere computation."  *Id*.  Furthermore, the "award is proper where the trier of fact need not exercise its judgment to assess the amount of damages."  *Id*.  In this case, damages were readily ascertainable and the amount required mere computation, not the exercise of judgment, by the Bankruptcy Court.

   I.  Pretrial Order

  Welbilt argues that the Bankruptcy Court's Decision awarded the Trustee relief that the Trustee did not seek in the Pretrial Order.  Specifically, it argues that the award of the approximately $6.9 million dividend paid by Consolidated in February 1989 and the return of transfers that occurred between 1989 and 1993 was relief not sought in the Pretrial Order.  Once again, this argument appears for the first time here and is waived.  *See Prymer*, 29 F.3d at 1215; Welbilt Post-Trial Brief at 7-9 (Bankr. Docket No. 620).  Moreover, the Pretrial Order stated several times that th Trustee sought return of the $6.9 million.[6]  Additionally, the Pretrial Order stated that the Trustee sought return of all interest paid on illegal dividends.  The Trustee also requested the return of those amounts in his Proposed Findings of Fact submitted to the Bankruptcy Court.  Bankr. Docket No. 533).

   J.  Welbilt's Proof of Claim

  Welbilt argues that the Bankruptcy Court improperly disallowed its proof of claim.  The Court disagrees.  Section 502(d) states that "the court shall disallow any claim of any entity from

---

  [6]The Pretrial Order states, for example, "Enodis . . . failed to repay amounts owed to the Debtor in the approximate amount of $6.9 million."  Pretrial Order at pp. 19-21, 24 (Bankr. Docket No. 501).

which the property is recoverable under section 550 . . . or that is a transferee of a transfer

voidable under section . . . 544." 11 U.S.C. § 502(d).  In light of the Bankruptcy Court's

judgment, disallowance of Welbilt's proof of claim was required.

     V.      Rule 9033(b) Objections[7]

In addition to the Bankruptcy Court's Decision discussed above, the Bankruptcy Court

made proposed findings of fact and conclusions of law, along with a proposed judgment

concerning the other defendants, Welbilt Holding Company, Marion H. Antonini, Daniel Yih,

Richard L. Hirsch, David L. Hirsch, and Lawrence Gross.[8]  These defendants submitted

objections pursuant to Fed. R. Bankr. P. 9033(b).  As such, this Court must review de novo the

matters objected to and may accept, reject, or modify the proposed findings of fact and

conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge

with instructions.  Fed. R. Bankr. P. 9033(b).

First, Defendants Richard L. Hirsch, David A. Hirsch, and Lawrence Gross timely

objected to the proposed judgment, arguing that the Bankruptcy Court erred in proposing that

judgment be entered in their favor because all claims against them were previously dismissed by

the Bankruptcy Court on February 20, 2002.  Therefore, they argue, the Bankruptcy Court's

recommended judgment order improperly resurrects the time period for the Trustee to appeal.

The Court disagrees.

---

[7]This discussion is closely related to, and should be read in conjunction with, the Trustee's cross-appeal.  That cross-appeal is in this Court as Civil No. 4:04-CV-65, and the order in that matter will be entered at the same time as this order.

[8]As to these other defendants, this matter is considered a non-core proceeding.  *See* 28 U.S.C. § 157(c)(1); Fed. R. Bankr. P. 9033(d).

The parties agree that the February 20, 2002 order disposed of all claims against Defendants Richard Hirsch, David Hirsch, and Lawrence Gross.  They disagree, however, on how that order affects the timeliness of the Trustee's appeal.  The Trustee argues that the February 20, 2002 order did not make any findings under Rule 54(b) of the Federal Rules of Civil Procedure.  As the Trustee correctly points out, "the failure to appeal an order in a bankruptcy case must forfeit later review only when the order would have been final under the more stringent standards of 28 U.S.C. § 1291.  That is, the forfeiture rules that apply to ordinary litigation apply in bankruptcy cases too."  *In re Kilgus*, 811 F.2d 1112, 1116 (7th Cir. 1987).  An order granting summary judgment only as to some of the defendants is not final under U.S.C. § 1291, absent a Rule 54(b) finding.  *See Sandwiches, Inc. v. Wendy's Int'l, Inc.*, 822 F.2d 707 (7th Cir. 1987).  No such finding was made here, and the remaining claims in the adversary proceeding had yet to be disposed of when the February 20, 2002 order issued.  Therefore, the Trustee could properly wait until the remaining claims had been disposed of to appeal.  The Court rejects the objections made by Defendants Richard Hirsch, David Hirsch, and Lawrence Gross and accepts the Court's findings of fact and conclusions of law as they relate to those Defendants.

Second, the Bankruptcy Court proposed that Judgment be entered in favor of Defendants Welbilt Holding, Marion H. Antonini, and Daniel Yih.  Apparently this wasn't good enough for these Defendants, however, as they saw fit to file more than 100 pages of objections to the Bankruptcy Court's proposed findings of fact and conclusions of law.  The Defendants object to virtually every sentence of the Bankruptcy Court's proposed findings of fact and conclusions of law.  So this Court is faced with the rather vexing task of wading through more than 100 pages

of objections to findings of fact and conclusions of law that ultimately led the Bankruptcy Court to propose judgment in favor of the objecting parties.

The Court agrees with the Trustee that the Defendants never adequately explain how any of their objections impact the Bankruptcy Court's ruling.  The Defendants also fail to adequately identify how any of the specific findings or conclusions to which they object relate to any specific count against these defendants.  Nevertheless, the Court has conducted a de novo review of the matters objected to and finds that the Defendants' objections are utterly meritless.  As such, the Court declines the implicit invitation to rewrite the Bankruptcy Court's Decision line by line, and hereby accepts the proposed findings of fact and conclusions of law in their entirety.

VI.     Conclusion

Based on the foregoing, the judgment of the Bankruptcy Court against Welbilt is **AFFIRMED**.  The Bankruptcy Court's proposed findings of fact and conclusions of law are **ACCEPTED** in their entirety.  Accordingly, the Court hereby orders that judgment be entered in favor of Defendants Welbilt Holding Company, Marion H. Antonini, Daniel Yih, Richard L. Hirsch, David L. Hirsch, and Lawrence Gross and that the Trustee recover nothing from them.

**SO ORDERED**.

**Date: October 31, 2006**                          _____**s/Allen Sharp**_____
                                                          **ALLEN SHARP, JUDGE**
                                                          **UNITED STATES DISTRICT COURT**